The Honorable Bill Walters State Senator Post Office Box 280 Greenwood, Arkansas 72936
Dear Senator Walters:
This is in response to your request, on behalf of Mayor Patrick Trevors of the City of Waldron, for an opinion regarding the abolition of a public facilities board. It is my understanding from your letter that the Waldron City Council passed an ordinance in May 1996 creating a public facilities board under the authority of A.C.A. §§ 14-137-101 et seq. It is also my understanding that in November 1996 a majority of the members of the city council were replaced, and in January 1997 the city council elected to summarily abolish the facilities board that had been formed by the preceding city council. Your question regarding this situation is as follows:
 Can the newly elected city council simply abolish the facilities board that had been established by the preceding council pursuant to A.C.A. §§ 14-137-101 et. seq.?
It is my opinion that the answer to this question is generally "yes." However, if the ordinance abolishing the public facilities board operates retroactively to impair an existing contract right, it would be in violation of the state constitution and thus prohibited.
The general purpose of the Public Facilities Boards Act is to provide an alternative method of financing public facilities. A.C.A. § 14-137-102
(1987). Arkansas Code Annotated § 14-137-106 (Supp. 1995) authorizes a municipality to create one or more public facilities boards, and A.C.A. § 14-137-107 (1987) provides that each public facilities board shall be created by ordinance of the governing body. Governing body, as used in the Public Facilities Boards Act, means the council or other like body in which the legislative functions of a municipality are vested. A.C.A. §14-137-103(5) (Supp. 1995). The public facilities board is a public instrumentality of the municipality that created the board. A.C.A. §14-137-114 (1987). The governing body that creates the board must specify in the enacting ordinance the powers granted to the board, and the governing body may place specific limitations on the exercise of the powers granted to the board. A.C.A. § 14-137-107 (1987). Also, the public facilities board must submit an annual report to the governing body. A.C.A. § 14-137-123 (1987). Nevertheless, except as otherwise expressly provided in the Public Facilities Boards Act, none of the powers granted to a board under the provisions of the act shall be subject to the supervision or regulation of any municipality. A.C.A. § 14-137-104
(1987). Each public facilities board is authorized and empowered "[t]o have perpetual succession as a body politic and corporate and to adopt bylaws for the regulation of its affairs and the conduct of its business." A.C.A. § 14-137-111(a)(1) (Supp. 1995). Finally, the Public Facilities Boards Act does not contain any provision regarding the dissolution or abolition of a public facilities board.
The Arkansas Supreme Court has concluded that the city council of an Arkansas municipality, having adopted an ordinance creating a water and sewer commission, could abolish the commission by a majority vote. Cityof Ward v. Ward Water Sewer System, 280 Ark. 177, 655 S.W.2d 454
(1983); see also Op. Att'y Gen. No. 92-323 (city council may abolish civil service commission), Op. Att'y Gen. No. 94-029 (quorum court may "deactivate" rural development authority by repeal of the initial county court resolution activating it); Wright v. City of Florence,93 S.E.2d 215 (S.C. 1956) (city council may repeal ordinance creating civil service commission where legislature simply granted city permission to establish by ordinance a commission; the legislature did not establish or create the commission, the city council created it by ordinance). The trial court held that the commission had continuing authority and could not be abolished. The Supreme Court acknowledged that the commission had been granted absolute authority for the management and operation of the water and sewer system. See generally A.C.A. §§ 14-234-306—307 (1987 and Supp. 1995). The court, however, also recognized the settled rule of law that whatever a municipal government may do by a majority vote, it may undo by majority vote, absent constitutional or statutory restrictions. The court stated that in the absence of any provision, either express or rationally implied, that a water and sewer commission once created could never be abolished by the governing body that created the commission, it was bound to recognize the general rule.
On the other hand, in City of Cabot v. Thompson, 286 Ark. 395,692 S.W.2d 235 (1985), the court held that a city of the first class did not possess the authority to abolish its municipal court. Although the court referred to the general rule regarding the power to repeal, the court stated:
 There is no general implication of power to repeal where an ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time prescribed by the legislature, which excludes the implication that the legislative body of the city is given any further jurisdiction over the subject than to do the one act.
City of Cabot, supra (quoting McQuillin, Municipal Corporations, § 21.10 (1980)). The court emphasized that a city of the first class was authorized to defer establishing a municipal court, but the city was required to adopt an ordinance creating a municipal court as soon as the governing body determined that the city had sufficient funds. The court noted that there was no statutory provision authorizing a city to abolish its municipal court due to financial problems within the city. Similarly, the Superior Court of New Jersey has determined that a New Jersey municipality cannot dissolve a solid waste management authority once it has been created. Ringwood Solid Waste Management Authority v.Borough of Ringwood, 328 A.2d 258 (N.J.Super. Law Div. 1974). The court commented that if the legislature had intended for the creating governing body to exercise control over the authority, it would not have designated the authority as a "public body politic and corporate constituting a political subdivision of the State." The court concluded that the powers of a municipality were limited solely to creating the authority by ordinance and to appointing its members; therefore, the court held that once the municipality acted it could proceed no further.
It is my opinion that the creation and abolition of a public facilities board is comparable to the creation and abolition of a water and sewer commission. A city is not required to create a public facilities board; such action is clearly within the city's discretion. Also, the city creates the board rather than the legislature. "Where a municipal legislative authority is vested with the power, in its discretion, to establish a particular board, it may ordinarily abolish such board." 56 Am. Jur. 2d Municipal Corporations § 338 (1971); see also A.C.A. §14-55-401 (1987) (ordinances lawfully adopted by city council remain and continue in force until altered or repealed by the council). Further, although the powers of a public facilities board are generally not subject to the supervision or regulation of the municipality, the board is considered a public instrumentality of the municipality. Finally, there is no provision in the Public Facilities Boards Act that prohibits a city council from abolishing a public facilities board, nor are there any statutory or constitutional provisions that generally prohibit a city council from abolishing an entity that it has created. Absent such restrictions, it is my opinion that the Arkansas Supreme Court would in all likelihood follow the settled rule that whatever a municipal government may do by a majority vote, it may undo by majority vote. Cityof Ward, supra; A.C.A. § 14-55-401. Accordingly, it is my opinion that the Waldron City Council generally may abolish, by ordinance, a public facilities board that was established by the preceding city council.
It must, however, be emphasized that municipal corporations are not authorized to pass any law contrary to the general laws of the state. Ark. Const. art. 12, § 4. Arkansas Constitution article 2, § 17, and United States Constitution article 1, § 10, prohibit the enactment of laws "impairing the obligation of contracts." Also, it has been stated that the general power to repeal does not extend to authorize impairment of a contract or deprivation of property without due process of law.Local #8 International Association of Fire Fighters v. City of GreatFalls, 568 P.2d 541 (Mont. 1977) (quoting McQuillin, MunicipalCorporations, § 21.10 (3rd. ed.)). In fact, it has been stated that "the right of a municipal body to repeal an ordinance creating an authority, commission or other body would be limited, if not lost, if the body during its existence had entered into legal contracts or granted legal franchises which would be either impaired or disavowed if the body were abolished." Board of Recreation Commissioners of the Borough ofRutherford v. Borough of Rutherford, 400 A.2d 95 (N.J.Super. App. Div. 1979). Thus, if the ordinance abolishing the public facilities board operates retroactively to impair an existing contract right, including rights concerning the issuance of bonds, it is my opinion that it would be in violation of the state constitution and prohibited. This question would turn upon the specific facts surrounding the public facilities board and upon the specific nature and particular provisions of any contracts that may be affected.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh